No. 21-20447

# In the United States Court of Appeals for the Fifth Circuit

PAYMENTECH, L.L.C.; JPMORGAN CHASE BANK, N.A.,

*Plaintiffs – Appellees/Cross-Appellants*

*v.*

LANDRY'S INCORPORATED,

*Defendant – Appellant/Cross-Appellee*

*v.*

VISA, INCORPORATED; MASTERCARD INTERNATIONAL, INCORPORATED,

*Third Party Defendants – Appellees/Cross-Appellants*

On Appeal from the United States District Court for the Southern District of Texas, Houston Division, No. 4:18-cv-1622, Hon. Lynn N. Hughes, Judge Presiding

## BRIEF OF APPELLANT

ORRICK, HERRINGTON &
    SUTCLIFFE, L.L.P.
    Douglas Harlan Meal
    Seth Carlton Harrington
222 Berkley St., Ste. 2000
Boston, Mass. 02116
(617) 880-1800

FOGLER, BRAR, O'NEIL
& GRAY LLP
    Murray Fogler
    Michelle Gray
909 Fannin St., Ste. 1640
Houston, Texas 77010
(713) 481-1010

YETTER COLEMAN LLP
    Constance H. Pfeiffer
    Christian J. Ward
    Shayna M. Goldblatt
811 Main St., Ste. 4100
Houston, Texas 77002
(713) 632-8000

**Attorneys for Appellant/Cross-Appellee Landry's Incorporated**

## CERTIFICATE OF INTERESTED PERSONS

No. 21-20447

PAYMENTECH, L.L.C.; JPMORGAN CHASE BANK, N.A.,

Plaintiffs – Appellees/Cross-Appellants

*v.*

LANDRY'S INCORPORATED,

Defendant – Appellant/Cross-Appellee

*v.*

VISA, INCORPORATED; MASTERCARD INTERNATIONAL, INCORPORATED,

Third Party Defendants – Appellees/Cross-Appellants

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate their possible recusal or disqualification:

1.     No publicly held company owns 10% or more of the stock of Defendant-Appellant/Cross-Appellee Landry's Incorporated.

2.     Defendant-Appellant/Cross-Appellee Landry's Incorporated is represented in the Fifth Circuit by:

Douglas Harlan Meal
Seth Carlton Harrington
ORRICK, HERRINGTON &
    SUTCLIFFE, L.L.P.
222 Berkley Street, Suite 2000
Boston, Massachusetts 02116

Constance H. Pfeiffer
Christian J. Ward
Shayna M. Goldblatt
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002

Murray Fogler
Michelle Elizabeth Gray
FOGLER BRAR O'NEIL &
GRAY, L.L.P.
909 Fannin Street, Suite 1640
Houston, Texas 77010

Counsel who represented the Defendant-Appellant/Cross-Appellee Landry's

Incorporated in the district-court proceedings are:

Douglas Harlan Meal
Seth Carlton Harrington
ORRICK, HERRINGTON &
    SUTCLIFFE, L.L.P.
222 Berkley Street, Suite 2000
Boston, Massachusetts 02116

Michelle Elizabeth Gray
FOGLER BRAR O'NEIL & GRAY,
    L.L.P.
909 Fannin Street, Suite 1640
Houston, Texas 77010

3.    Plaintiffs-Appellees/Cross-Appellants Paymentech, L.L.C.; JPMorgan

Chase Bank, N.A. are represented in the Fifth Circuit by:

David Bruce Salmons
Jason York Hoo Siu
MORGAN, LEWIS & BOCKIUS,
    L.L.P.
1111 Pennsylvania Ave., N.W.
Washington, DC 20004

Michelle Park Chiu
MORGAN, LEWIS & BOCKIUS, L.L.P.
1 Market Street
San Francisco, California 94105

Additional counsel who represented the Plaintiffs-Appellees/Cross-Appellants Paymentech, L.L.C.; JPMorgan Chase Bank, N.A. in the district-court proceedings are:

David Jack Levy
Cullen Garrett Pick
Nancy Lynne Patterson
MORGAN, LEWIS & BOCKIUS,
   L.L.P.
1000 Louisiana Street
Houston, Texas 77002

Michelle Park Chiu
MORGAN, LEWIS & BOCKIUS, L.L.P.
1 Market Street
San Francisco, California 94105

4.    Third Party Defendants-Appellees/Cross-Appellants Mastercard International, Inc. is represented in the Fifth Circuit by:

Stephen Patrick Pate
COZEN O'CONNOR, P.C.
1221 McKinney St., Suite 2900
Houston, Texas 77010

Matthew C. Daly
Martin S. Hyman
GOLENBOCK EISEMAN ASSOR
   BELL & PESKOE, L.L.P.
711 3rd Avenue, 17th Floor
New York, New York 10017

5.    Third Party Defendants-Appellees/Cross-Appellants Visa, Incorporated is represented in the Fifth Circuit by:

Allyson Newton Ho
Andrew Patrick LeGrand
Elizabeth Ashley Kiernan
GIBSON, DUNN & CRUTCHER,
   L.L.P.
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201

Additional counsel who represented the Third-Party Defendants-Appellees/Cross-Appellants Visa, Incorporated in the district-court proceedings are:

Andrew Patrick LeGrand
Ramsey William Fisher
GIBSON, DUNN & CRUTCHER,
   L.L.P.
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201

Chantalle Carles Schropp
GIBSON, DUNN & CRUTCHER,
   L.L.P.
1050 Connecticut Ave., NW
Washington, DC 20036


*/s/ Constance H. Pfeiffer*
  Constance H. Pfeiffer
*Attorney of record for Appellant /*
*Cross-Appellee Landry's Incorporated*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would likely aid the Court's decisional process. This case involves data-security rules set by Visa and Mastercard to govern banks and merchants. The $20 million judgment holds Landry's, Inc., a merchant, summarily liable after criminals attacked its computer system, although nobody proved Landry's violated any rules. While allowing almost no discovery, and offering almost no analysis in its opinions, the district court disposed of this case via summary judgment and a dismissal on the pleadings. Oral argument in this important case would ensure the issues are fully considered after such an abrupt imposition of multimillion dollar liability.

# TABLE OF CONTENTS

PAGE

Certificate of Interested Persons ..................................................2

Statement Regarding Oral Argument ......................................6

Table of Authorities ..............................................................10

Jurisdiction ..........................................................................18

Statement of Issues for Review .............................................19

Introduction ........................................................................20

Statement of the Case ..........................................................22

Standards of Review ............................................................34

Summary of the Argument....................................................35

Argument............................................................................36

I.      The Assessments Are Unenforceable Penalties, and There Is No
        Obligation to Indemnify Chase for Its Voluntary Payment. ........36

        A.      The Assessments Are Unenforceable Penalties. ................37

                1.      California and New York hold penalties unenforceable..........38

                2.      The assessments do not reasonably estimate actual
                        damages to Visa and Mastercard. ............................40

                3.      The district court misanalyzed the issue. ................44

        B.      Chase Is Not Entitled to Indemnification for Paying Penalties. .........46

                1.      The Merchant Agreement does not require Landry's to
                        indemnify Chase for unenforceable penalties..........................46

                2.      Independently, the voluntary-payment rule bars recovery. ......48

II.     In Any Event, Chase Failed to Prove That It Is Entitled to Indemnity. ........53

A.    The Merchant Agreement Allows for Indemnification Only Upon Proof of Certain Events. ...........................................53

B.    The Mandiant Report Should Have Been Stricken. ...........57

    1.    The Mandiant Report is hearsay. .............................57

    2.    The Mandiant Report offers expert conclusions without a proper foundation or discovery disclosures. ............58

C.    Even with the Mandiant Report, Chase Did Not Carry Its Summary Judgment Burden. .................................................59

    1.    The Mandiant Report does not support finding a breach of the Security Guidelines. .........................................60

    2.    The Mandiant Report could not show that any data was "compromised." ........................................................61

D.    At Most, Chase's Evidence Raises Genuine Issues of Material Fact. ......................................................................................65

III.   Alternatively, the Claims Against Visa and Mastercard Are Viable. ...........68

A.    Equitable Subrogation Allows Non-Parties to Challenge Contracts. ...............................................................................68

B.    Landry's Has Standing Against Visa and Mastercard as Chase's Equitable Subrogee. ..............................................................70

C.    Landry's Would Also Have Standing if New York Law Applied. ................................................................................72

D.    Dismissing the Direct Claims Was Error Because the District Court Failed to Address Them. .........................................73

    1.    The unjust enrichment/money had and received claims should be remanded. ...................................................74

    2.    The deceptive business practices claims should be remanded. ..............................................................................75

Conclusion .............................................................................................76

Certificate of Service ................................................................................78

Certificate of Compliance .........................................................................80

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.*,
  778 S.W.2d 492 (Tex. App.—Dallas 1989, writ denied) ................................51

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
  404 F.3d 566 (2d Cir. 2005) ................................................................42

*Am. Centennial Ins. Co. v. Canal Ins. Co.*,
  843 S.W.2d 480 (Tex. 1992) ...............................................................69

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..........................................................................60

*Armstrong v. Trico Marine, Inc.*,
  923 F.2d 55 (5th Cir. 1991) ...............................................................73

*Arnold v. Williams*,
  979 F.3d 262 (5th Cir. 2020) .............................................................34

*Associated Int'l Ins. Co. v. Scottsdale Ins. Co.*,
  862 F.3d 508 (5th Cir. 2017) .............................................................69

*Atrium Med. Ctr., LP v. Hous. Red C LLC*,
  595 S.W.3d 188 (Tex. 2020) ..............................................................43

*Ayres Welding Co., v. Conoco, Inc.*,
  243 S.W.3d 177 (Tex. App.—Houston [14th Dist.] 2007, pet.
  denied)...........................................................................................54

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, USA, Inc.*,
  818 N.E.2d 1140 (N.Y. 2004).............................................................76

*BMG Direct Mktg., Inc. v. Peake*,
  178 S.W.3d 763 (Tex. 2005) ..............................................................48

*Bondanza v. Peninsula Hosp. & Med. Ctr.*,
  590 P.2d 22 (Cal. 1979)....................................................................42

*Carrick v. Zurich-Am. Ins. Grp.*,
  14 F.3d 907 (3d Cir. 1994) ...................................................................69

*Cent. Transp., LLC v. Balram Trucking, Ltd*,
  746 F. App'x 508 (6th Cir. 2018) ........................................................69

*Certain Underwriters at Lloyd's, London v. Sinkovich*,
  232 F.3d 200 (4th Cir. 2000) ...............................................................57

*Chem. Bank v. Meltzer*,
  712 N.E.2d 656 (N.Y. 1999) .................................................................72

*City of Corpus Christi v. Heldenfels Bros., Inc.*,
  802 S.W.2d 35 (Tex. App.—Corpus Christi 1990), *aff'd*, 832
  S.W.2d 39 (Tex. 1992) ..........................................................................75

*City of New York v. Smokes-Spirits.com, Inc.*,
  911 N.E.2d 834 (N.Y. 2009) .................................................................75

*Colony Ins. Co. v. Peachtree Constr. Ltd.*,
  647 F.3d 248 (5th Cir. 2011) ................................................................71

*Consol. Forwarding Co. v. Union Truck Depot, Inc.*,
  356 S.W.2d 693 (Tex. Civ. App.—Dallas 1962, writ dism'd)............51

*Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*,
  683 F.3d 79 (5th Cir. 2012) ..................................................................69

*Dresser Indus., Inc. v. Page Petroleum, Inc.*,
  853 S.W.2d 505 (Tex. 1993) ...........................................................47, 48

*Dyer Bros. Golden W. Iron Works v. Cent. Iron Works*,
  182 Cal. 588 (1920) ...............................................................................42

*Ethyl Corp. v. Daniel Constr. Co.*,
  725 S.W.2d 705 (Tex. 1987) .................................................................50

*Foland v. Seacor Marine, Inc.*,
  40 F.3d 385, 1994 WL 652535 (5th Cir. 1994).................................73

*Fowler v. Smith*,
  68 F.3d 124 (5th Cir. 1995) ..................................................................58

*FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*,
     426 S.W.3d 59 (Tex. 2014)......................................................43, 63, 64

*Franklin v. Regions Bank*,
     976 F.3d 443 (5th Cir. 2020) ........................................................34, 71

*Friberg-Cooper Water Supply Corp. v. Elledge*,
     197 S.W.3d 826 (Tex. App.—Fort Worth 2006), *rev'd on other
     grounds*, 240 S.W.3d 869 (Tex. 2007) ...............................................74

*Frost Nat'l Bank v. L & F Distribs., Ltd.*,
     165 S.W.3d 310 (Tex. 2005) ...............................................................64

*Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l,
     Ltd.*,
     259 S.W.3d 140 (Tex. 2008) ...............................................................70

*Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*,
     511 P.2d 1197 (Cal. 1973)...................................................................38

*Genesco, Inc. v. Visa U.S.A. Inc.*,
     2013 WL 3790647 (M.D. Tenn. 2013)............................................75, 76

*Gulf Ins. Co. v. Burns Motors, Inc.*,
     22 S.W.3d 417 (Tex. 2000)..................................................................55

*Gulf, Col. & Santa Fe Ry. Co. v. McBride*,
     322 S.W.2d 492 (Tex. 1958) ...............................................................50

*Hamburger v. State Farm Mut. Auto. Ins. Co.*,
     361 F.3d 875 (5th Cir. 2004) ..............................................................58

*Hamilton v. Herrin Transp. Co.*,
     343 S.W.2d 300 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e.).....................51

*Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Co.*,
     878 N.Y.S.2d 97 (N.Y. App. Div. 2009)...............................................72

*Hammer v. Equifax Info. Servs., L.L.C.*,
     974 F.3d 564 (5th Cir. 2020) ..............................................................34

*Harbor Island Holdings, L.L.C. v. Kim*,
     132 Cal. Rptr. 2d 406 (Cal. Ct. App. 2003).........................................37

*Heldenfels Bros., Inc. v. City of Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992) ................................................................ 74

*Hoffman v. L & M Arts*,
    838 F.3d 568 (5th Cir. 2016) ............................................................. 55

*Huckaba v. Ref-Chem, L.P.*,
    892 F.3d 686 (5th Cir. 2018) ............................................................. 55

*Humana Hosp. Corp. v. Am. Med. Sys., Inc.*,
    785 S.W.2d 144 (Tex. 1990) .............................................................. 47

*In re Arby's Rest. Grp., Inc. Data Sec. Litig.*,
    No. 1:17-mi-55555-WMR (N.D. Ga. May 18, 2020) ......................... 41

*In re Heartland Payment Sys., Inc.*,
    No. H-10-171, MDL No. 2046, 2011, WL 1232352 (S.D. Tex.
    Mar. 31, 2011) .................................................................................... 41

*In re Isbell Records, Inc.*,
    586 F.3d 334 (5th Cir. 2009) ............................................................. 63

*In re TJX Cos. Retail Sec. Breach Litig.*,
    564 F.3d 489 (1st Cir. 2009) .............................................................. 41

*Javed v. British Airways PLC*,
    980 F.2d 1407 (11th Cir. 1993) ......................................................... 69

*Jetro Holdings, LLC v. Mastercard Int'l Inc.*,
    88 N.Y.S.3d 193 (N.Y. App. Div. 2d Dep't 2018) ....................... 72, 73

*JKC Holding Co. v. Wash. Sports Ventures, Inc.*,
    264 F.3d 459 (4th Cir. 2001) ............................................................. 37

*JMD Holding Corp. v. Cong. Fin. Corp.*,
    4 N.Y.3d 373 (N.Y. 2005) ............................................................ 37, 39

*Ledford v. Keen*,
    9 F.4th 335 (5th Cir. 2021) ............................................................... 34

*Lee v. Offshore Logistical & Transp., L.L.C.*,
    859 F.3d 353 (5th Cir. 2017) ............................................................. 58

*Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*,
   925 S.W.2d 565 (Tex. 1996) ................................................................64

*Luminant Mining Co. v. PakeyBey*,
   14 F.4th 375 (5th Cir. 2021) .............................................................34

*Mac Sales, Inc. v. E.I. du Pont de Nemours & Co.*,
   24 F.3d 747 (5th Cir. 1994) ..............................................................59

*Malik v. Cont'l Airlines Inc.*,
   305 F. App'x 165 (5th Cir. 2008) ....................................................73

*Mayo v. Hartford Life Ins. Co.*,
   354 F.3d 400 (5th Cir. 2004) ............................................................74

*Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*,
   236 S.W.3d 765 (Tex. 2007) ......................................................69, 70

*Millennium Holdings LLC v. Glidden Co.*,
   53 N.E.3d 723 (N.Y. 2016) ..............................................................72

*Mitchell's, Inc. v. Friedman*,
   303 S.W.2d 775 (Tex. 1957), *overruled on other grounds by Ethyl*
   *Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987)..........................49, 50

*Moore v. Ashland Chem. Inc.*,
   151 F.3d 269 (5th Cir. 1998) ............................................................58

*Motichka v. Cody*,
   5 A.D.3d 185 (N.Y. App. Div. 2004) ...............................................39

*Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*,
   759 F. App'x 280 (5th Cir. 2019) ....................................................37

*New York v. Feldman*,
   210 F.Supp.2d 294 (S.D.N.Y. 2002) ...............................................76

*NewCSI, Inc. v. Staffing 360 Sols., Inc.*,
   865 F.3d 251 (5th Cir. 2017) ............................................................39

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
   875 F.3d 107 (2d Cir. 2017) .............................................................75

*Pan Am. Gas. Co. v. Nat. Gas Constr. Corp.*,
  418 S.W.2d 380 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.)..........50, 51, 52

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*,
  574 S.W.3d 882 (Tex. 2019) ................................................................62

*Pennell v. United Ins. Co.*,
  243 S.W.2d 572 (Tex. 1951) ................................................................48

*Plas-Tex, Inc. v. U.S. Steel Corp.*,
  772 S.W.2d 442 (Tex. 1989) ................................................................47

*Producing Props., Inc. v. Sohio Petrol. Co.*,
  428 S.W.2d 365 (Tex. App.—Dallas 1968, no writ)........................................51

*Ridgley v. Topa Thrift & Loan Ass'n*,
  953 P.2d 484 (Cal. 1998) ................................................................38, 42

*Sally Beauty Holdings, Inc. v. Visa Inc.*,
  No. 19-6924-158 (158th Dist. Ct., Denton County, Tex., Oct. 8,
  2020) ................................................................................................42

*Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*,
  7 F.4th 301 (5th Cir. 2021) ................................................................62, 63

*SCA Promotions, Inc. v. Yahoo!, Inc.*,
  868 F.3d 378 (5th Cir. 2017) ................................................................54

*Securitron Magnalock Corp. v. Schnabolk*,
  65 F.3d 256 (2d Cir. 1995) ................................................................76

*Sina Drug Corp. v. Mohyuddin*,
  122 A.D.3d 444 (N.Y. App. Div. 2014) ................................................39

*Sonerra Res. Corp. v. Helmerich & Payne Int'l Drilling*,
  2012 WL 3776428 (Tex. App.—Houston [1st Dist.] 2012, pet.
  denied)................................................................................................54

*Staats v. Miller*,
  243 S.W.2d 686 (Tex. 1951) ................................................................74

*Sun Oil Co. (Delaware) v. Renshaw Well Serv., Inc.*,
  571 S.W.2d 64 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.)........................49

*Trans-Cold Express, Inc. v. Hardin*,
   415 S.W.2d 431 (Tex. App.—Austin 1967, no writ) ...................................49, 51

*Trs. of Columbia Univ. in N.Y.C. v. D'Agostino Supermarkets, Inc.*,
   36 N.Y.3d 69 (N.Y. 2020) .........................................................................39

*Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*,
   361 N.E.2d 1015 (N.Y. 1977).................................................................38, 39

*U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*,
   490 S.W.3d 20 (Tex. 2015).........................................................................46

*URI, Inc. v. Kleberg Cty.*,
   543 S.W.3d 755 (Tex. 2018) .......................................................................62

*Vill. Place, Ltd. v. VP Shopping, LLC*,
   404 S.W.3d 115 (Tex. App.—Houston [1st Dist.] 2013, no pet.).....................64

*XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*,
   513 F.3d 146 (5th Cir. 2008) ...................................................................50, 51

## STATUTES & RULES

28 U.S.C. § 1291 ...........................................................................................18

28 U.S.C. § 1332 ...........................................................................................18

28 U.S.C. § 1367(a) .......................................................................................18

Cal. Bus. & Prof. Code § 17200 ...............................................................73, 75

Cal. Civ. Code § 1671(b) ...............................................................................38

Cal. Civ. Code § 3300 ...................................................................................38

Fed. R. Civ. P. 8 ...........................................................................................34

Fed. R. Civ. P. 26(a)(2)(C) ............................................................................58

Fed. R. Civ. P. 37(c)(1) .................................................................................59

Fed. R. Civ. P. 56(a) .....................................................................................34

Fed. R. Civ. P. 56 (c)(2) ................................................................................58

Fed. R. Evid. 801 ..................................................................................57

Fed. R. Evid. 802 ..................................................................................57

Fed. R. Evid. 803 ..................................................................................57

N.Y. Gen Bus. Law § 349 ...............................................................73, 75

Tex. Bus. & Com. Code § 521.053(a) ..................................................64

**OTHER AUTHORITIES**

David W. Opderbeck, *Cybersecurity, Data Breaches, and the
Economic Loss Doctrine in the Payment Card Industry*, 75 MD. L.
REV. 935 (2016) ............................................................................64, 65

*Indemnify*, BLACK'S LAW DICTIONARY (6th ed. 1990) ...........................47

*Indemnity agreement*, BLACK'S LAW DICTIONARY (5th ed. 1979) .........47

## JURISDICTION

The district court had diversity jurisdiction over the lawsuit filed by Ohio citizens, JPMorgan Chase Bank, N.A. and Paymentech, LLC against Texas citizen Landry's Inc. *See* 28 U.S.C. § 1332. The district court had supplemental jurisdiction over Landry's third-party claims against Visa, Inc. and MasterCard International, Inc. *See* 28 U.S.C. § 1367(a); ROA.26, 78, 180, 595, 639.

This Court has jurisdiction over Landry's appeal from the district court's final judgment. *See* 28 U.S.C. § 1291; RE.4; ROA.2599 (entered July 22, 2021). Landry's timely noticed its appeal on August 20, 2021. ROA.2633-35. Chase noticed its cross-appeal. ROA.2636-37.

## STATEMENT OF ISSUES FOR REVIEW

Did the district court err in three rulings? Specifically:

### I.    Denial of Landry's MSJ

Should a take-nothing summary judgment have been granted for Landry's because Chase's indemnity suit seeks recovery for payments that are unenforceable penalties for which Chase had no duty to pay and cannot now seek indemnity for its voluntary payments?

### II.    Grant of Chase's MSJ

At a minimum, should Chase's summary judgment have been denied because Chase failed to conclusively establish facts triggering a duty to indemnify Chase? Specifically, did the district court err by refusing to strike Chase's inadmissible evidence and disregarding evidence Landry's offered to raise fact issues on whether it owed any indemnity duty?

### III.    Grant of Visa's and Mastercard's Motions to Dismiss

Should the claims Landry's brought against Visa and Mastercard survive a Rule 12(b)(6) motion to dismiss because Landry's established standing? Separately, did the district court err by dismissing all claims without even addressing some of them?

## INTRODUCTION

Visa and Mastercard are the credit card superpowers in the U.S. and globally. Their market dominance allows them to set extensive, proprietary rules for banks and merchants. In this case, they each used their rules to impose $20 million in discretionary "assessments" on a bank after a merchant's system was criminally attacked. This appeal primarily challenges whether that was valid.

The proprietary assessment scheme requires careful attention to the parties. Unlike American Express and Discover, which issue cards directly to customers, Visa and Mastercard contract directly with banks. These banks are called Issuers when they issue cards to customers and Acquirers when they acquire and process payments from merchants. Large banks are *both* Issuers and Acquirers (*e.g.*, JPMorgan Chase, Bank of America, Citibank, Wells Fargo, Capital One). This case involves the largest bank by U.S. credit card market share: JPMorgan Chase.

Under Visa's and Mastercard's systems, when hackers attack a merchant's network and try to access credit card data, Visa and Mastercard have discretion under their rules to impose assessments on the merchant's Acquirer (here, Chase). The rules contemplate that the assessments will then be paid to Issuers—even though Issuers need not demonstrate that they have suffered any losses from a data breach. This creative cost-shifting system thus favors the Issuers, which fuel this multi-trillion-dollar business by putting credit cards in the hands of consumers.

For Acquirers to object to assessments, they appeal to Visa and Mastercard, who sit as judge and jury to review their own determinations. Visa and Mastercard rely on investigation reports only from investigators within their approved network, who have every incentive to justify imposing assessments. Acquirers invariably accept Visa's and Mastercard's decisions on appeal without further challenge, presumably because *Acquirers are not left holding the bag*. At least in this case, Chase turned to its contract with the merchant and contends it is owed indemnity.

Merchants have no direct contracts with Visa or Mastercard and thus cannot litigate the validity of assessments unless they are sued for indemnity by the banks. And Acquirers have little incentive to challenge assessments when they are imposed, because the largest Acquirers ultimately benefit from these payments in their roles as Issuers.

This system works smoothly when no one objects, but acquiescence does not make the flow of money from merchants to Issuers lawful. The system has a flaw: Basic contract principles do not allow an unharmed party to collect money from one party to hand over to another. Visa and Mastercard lack contractual rights to enforce a private loss-allocation system that is divorced from fundamental principles of privity and just compensation for actual losses. This case involves a merchant standing up to Visa, Mastercard, and Chase to call the assessments what they are: unlawful, unenforceable penalties.

### STATEMENT OF THE CASE

### *The parties*

This case involves credit card companies at the top of the food chain: Visa and Mastercard International, described in the industry as Payment Brands. Visa and Mastercard operate through contracts with banks, who issue their branded cards to customers and process transactions on behalf of merchants. ROA.464-548, 592-678. They do not contract with customers or merchants. ROA.830, 1780.

The bank in this case is JPMorgan Chase Bank N.A. JPMorgan delegates its authority to process payments to its subsidiary, Paymentech L.L.C. ROA.25-27, 44-48, 80-81, 132-33. The parties refer to these entities collectively as Chase.

The merchant in this case is Landry's Inc.—a Houston-based dining, hospitality, and entertainment company. ROA.342.

### *This dispute*

After Landry's was criminally attacked in a data-security intrusion, ROA.26, 35-36, the Payment Brands imposed more than $20 million in assessments on Chase—the Acquirer bank for Landry's. ROA.201-202. Chase later sued Landry's to recover the $20 million when Landry's refused to indemnify it. Landry's denies the assessments' lawfulness and challenges their enforceability. ROA.122-23, 173, 175, 190-214. Landry's filed third-party claims against Visa and Mastercard to bring them into the suit.

### *Visa and Mastercard have a network of members who follow rules*

An overview of how Visa and Mastercard operate will help make sense of how they have structured their own loss-allocation system.

Visa and Mastercard contract with banks who become members of their networks. ROA.80-82, 132-34, 634, 678. Banks are called Issuers when they issue cards to consumers; they are called Acquirers when they accept and process payments from merchants. ROA.80-82, 132-34. Chase, like other large banks, wears both hats.[1] *See* ROA.144, 1904, 2714, 2842-43, 3193.



---

[1] Sometimes, Acquirers contractually delegate their network-access authority to non-members known as payment processors like Paymentech, which JPMorgan owns. ROA.80-82, 132-34, 218-20, 243, 257; ROA.26.

To join the networks as "members," Issuers and Acquirers contract with the Payment Brands. ROA.80-81, 131-32, 218-19, 595-96, 639-40, 1642, 1836. The members agree to follow rules each Payment Brand develops (Payment Brand rules). *E.g.*, ROA.218-19, 221-75. Members also agree to follow industry data-security standards for payment cards. Visa and Mastercard, along with others in the Payment Card Industry (PCI), founded the PCI Council, which crafts the PCI Data Security Standard (Security Guidelines or PCI DSS). ROA.2250-51; *see* ROA.2793; *see also, e.g.*, ROA.596-98, 641-42.

The Security Guidelines govern the network, servers, or applications in any merchant's "cardholder data environment" — "people, processes, and technology that handle cardholder data or sensitive authentication data." ROA.2273; *see also, e.g.*, ROA.596-98, 641-42. They do not apply to a merchant's "corporate environment," such as a company's corporate email system. ROA.2253-54, 2273. This distinction is significant in this case, because the alleged deficiencies were not in Landry's cardholder data environment but rather in the corporate environment, which matters to whether they violate the rules. ROA.2251-54.

Acquirers, like Chase in this case, must incorporate both sets of rules (the Payment Brand Rules and Security Guidelines) into their contracts with merchants. ROA.242, 254.

### *Visa and Mastercard have Issuer reimbursement programs*

The Payment Brand Rules include "programs" that compensate Issuers for losses allegedly incurred responding to criminal attacks affecting data security. ROA.218-20, 247, 261-68. Visa's program is called the Global Compromised Account Recovery (Visa GCAR) program. ROA.30, 91-92, 218-19, 247. Mastercard's is the Account Data Compromise (Mastercard ADC) program. *E.g.*, ROA.33, 220, 260-73.

Under these programs, if a merchant experiences a data-security incident, the Payment Brands require either the Acquirer or merchant to retain a forensic investigator that the PCI Council preapproves. *E.g.*, ROA.263-68, 2994. The Payment Brands may reject the chosen investigator and insist on another. *See* ROA.264-67, 269, 2994. The Payment Brands' approved investigator must determine if there has been noncompliance with the Security Guidelines (created by the PCI Council, which the Payment Brands established). *See* ROA.263-68, 2994. Visa and Mastercard set the scope and rules for the investigation. ROA.265-68, 2994-97. After the Payment-Brand-directed investigation by the Payment-Brand-approved investigator, the Payment Brands' rules purport to allow them to impose monetary assessments on the Acquirer if certain prerequisites are satisfied, including a violation of the Security Guidelines. ROA.218, 220, 247, 269-75, 2986.

The Acquirer can appeal those assessments to the very entities seeking to collect the assessments: Visa and Mastercard. ROA.275, 3012-13. Visa and Mastercard characterize their appellate decisions as final. ROA.275, 3013.

But Visa and Mastercard do not keep the assessments to compensate themselves. As Chase, Visa, and Mastercard all concede, the Visa GCAR and Mastercard ADC programs are "designed to compensate *issuing banks—banks that issue credit cards*—for a portion of costs associated with counterfeit magnetic-stripe losses and/or PIN data fraud losses, as well as a portion of the associated operating expenses resulting from the compromise." ROA.30-31 (emphasis added) (discussing Visa GCAR); *see* ROA.91-92 (same), 33 & n.3 (Mastercard ADC), 97-98 (same), 219-20, 247, 271.

Thus, the assessments are not designed to make whole Visa and Mastercard— the only parties who contract with the Acquirers paying the assessments. ROA.219-20, 247, 271. And a bank like Chase is incentivized to acquiesce to paying those assessments because it also acts as an Issuer and would be the recipient of assessments in that role. ROA.92, 144, 1904, 1942, 2714, 2842-43, 3193. And on the acquiring side, it expects to be reimbursed by a merchant.

In this case, Chase had little reason to challenge the assessments because it planned to pass them along to Landry's by seeking indemnification under its contract with Landry's, which the parties call the "Merchant Agreement." RE.11.

### *The Merchant Agreement between Chase and Landry's*

The Merchant Agreement incorporates the Payment Brands Rules and the standards those companies dictate:

| **Complying with Visa's and Mastercard's Rules § 12** | You [Landry's] agree to comply with all data security standards, guidelines and requirements that may be published from time to time by any Payment Brand, including . . . the Payment Card Industry Data Security Standards (collectively, the 'Security Guidelines'). . . . |
|---|---|

It also has two limited indemnification provisions:

| **§ 11.2 Indemnity** | You [Landry's] agree to indemnify Paymentech [and] Member [JPMorgan]. . . from any losses, liabilities, and damages of any and every kind . . . arising out of any claim, complaint, or Chargeback . . . **caused by your noncompliance with . . . the Payment Brand Rules** . . . . |
|---|---|

| **§ 12 Indemnity** | You [Landry's] understand that your **failure to comply** with the Payment Card Rules, including the Security Guidelines, or **the compromise** of any Payment Instrument Information, may **result in** assessments, fines, and/or penalties by the Payment Brands, and you agree to indemnify and reimburse us [Paymentech] immediately **for any such assessment**, fine, or penalty imposed on us or the Member [JPMorgan] and any related loss, cost or expense incurred by us [Paymentech] or the Member [JPMorgan]. |
|---|---|

RE.11 (emphasis added).

The Merchant Agreement's express terms confirm that Landry's has a duty to indemnify Chase only if Chase has suffered a legally cognizable loss caused by (1) a failure by Landry's to comply with Payment Brand Rules, including the Security Guidelines, or (2) a card-data compromise. ROA.46-47.

### *Landry's fully complies with the Security Guidelines*

In 2013, IBM conducted an independent assessment of Landry's system. ROA.2254. IBM is a Qualified Security Assessor, approved by the PCI Council. ROA.2254. IBM certified that Landry's had fully complied with the Security Guidelines. ROA.2254-55, Sealed ROA.3720-21 (IBM Report), 3735-45. IBM found that two-factor authentication was in place as required for the cardholder data environment, which was isolated from Landry's corporate environment, to which the Security Guidelines do not apply. ROA.2254-55, 3720-21, 3789.

### *Nevertheless, criminal hackers attack Landry's*

Despite this compliance, a few months later, hackers began to install malware at multiple Landry's properties. ROA.79-80, 131-32, 342; *see* ROA.602-03, 647-49. Between May 2014 and December 2015, the malware collected and stored data from the magnetic stripe on the backs of cards. ROA.342, 2251-52; *see* ROA.603, 648. A digital forensic expert for Landry's explained that there is no forensic evidence that the malware transmitted the data or that the criminals otherwise retrieved, accessed, viewed, or used it. ROA.2250-52 (Cheri Carr Declaration).

### *Investigation finds no actual violations or compromised data*

Landry's reported the data intrusions, and the Payment Brands directed Chase to require Landry's to engage a PCI Council-approved forensic investigator. ROA.86-87, 138-39, 602, 647-48, 834, 1782, 2251, 3100. Landry's engaged security firm Mandiant, which issued its final report (Mandiant Report) to the Payment Brands in February 2016, nearly two years after the first data intrusion. ROA.2251, 3099.

The Mandiant Report did not identify any violation of the Security Guidelines within Landry's cardholder data environment. ROA.2251-54, 3103-04, 3155-56. Although the report concluded that the *corporate* environment lacked two-factor authentication, a feature mentioned in the Security Guidelines, *see* ROA.2251-54, 3103-04, 3155-56, that alleged deficiency could not violate the Security Guidelines themselves, which apply only to the *cardholder data* environment. ROA.2251, 2273.

The Mandiant Report also found no evidence that criminal intruders ever transmitted or retrieved, viewed, or used any credit card data collected by the malware. ROA.2251-52, 3108. That is, no evidence showed any data was compromised by leaving Landry's system or being accessed by unauthorized persons while within Landry's system. ROA.2251-52, 3108. The report included no forensic evidence to tie any compromised accounts to the intrusions. *See* ROA.2252, 3108.

### *The assessments*

Nevertheless, the Payment Brands imposed assessments on Chase. ROA.93, 99, 145, 151. Visa imposed a $12,628,367.13 assessment in July 2017. ROA.93,145, 201. Mastercard imposed a $10,548,342.50 assessment in October 2017. ROA.99, 151, 202.

At Landry's insistence, Chase appealed both decisions. ROA.95-96, 101-02, 147-48, 153-54, 3222-23, 3225-3242, 3246-62, 3598-606. Visa refused to budge and even tacked on an appeal fee of $50,000. ROA.97, 149, 201, 3243. Mastercard reduced its assessment to $7,383,839.75. ROA.102-03, 154-55, 202, 3606. Visa and Mastercard then collected the assessments in March 2018 by debiting "Paymentech via [JPMorgan] and Paymentech's settlement account." ROA.335.

### *Chase sues to have Landry's pay the assessments*

The same month, in March 2018, Chase demanded that Landry's indemnify it for the $20,062,206.88 in assessments. ROA.106, 157-58. Landry's declined. ROA.106-07, 158-59, 202. Chase then sued Landry's, pleading breach of contract, quantum meruit, and promissory estoppel. ROA.25. With the first presiding judge, the Hon. David Hittner, the parties commenced discovery. *See* ROA.178-89; *see also* ROA.1707, 2131-65. Soon after, the case was reassigned. ROA.801. On reassignment the Hon. Lynn Hughes halted discovery; as a result, very little discovery has occurred in this case. ROA.812, 2682, 2738.

Landry's impleaded Visa and Mastercard, asserting claims as Chase's equitable subrogee if Landry's is held liable to Chase. ROA.451-551, 590-678; ROA.593, 615-25, 637, 660-70. Landry's also pleaded direct claims against Visa and Mastercard for unjust enrichment, money had and received, and state statutory violations for deceptive business practices. ROA.625-31, 670-75.

### *Landry's moves for summary judgment on Chase's claim*

Before discovery got underway, Landry's moved for summary judgment on Chase's contract claim on a threshold issue: the assessments imposed on Chase are unenforceable penalties. ROA.190. The assessments are allegedly intended to compensate Issuers, which are strangers to the contract between the Payment Brands and Chase, and thus cannot be valid liquidated damages that measure harm to Visa and Mastercard. ROA.203-07. Instead, the assessments are unenforceable penalties, and Chase had no valid legal obligation to pay them. By voluntarily paying them, despite a valid defense, Texas's voluntary payment rule bars Chase from seeking indemnification. ROA.207-14.[2] The district court denied Landry's motion for summary judgment, partly based on its mistaken understanding that the assessments compensated the Payment Brands for their own losses. ROA.2095-97.

---

[2] The assessments are also unenforceable penalties because the amount of the assessment does not reasonably estimate actual damages, but that fact-bound argument required discovery and so was reserved for later.

### *Visa and Mastercard move to dismiss under Rule 12(b)(6)*

Visa and Mastercard moved to dismiss the third-party complaints, which pleaded additional reasons why the assessments were invalid. ROA.606-11, 651-56 (complaints); ROA.824, 1769 (motions to dismiss).

The district court granted the Payment Brands' dismissal motions, based on its conclusion that Landry's lacked standing as Chase's subrogee. ROA.2521-23. The district court did not even mention the direct claims against the Payment Brands, but nevertheless dismissed all claims. ROA.2521-23.

### *Chase moves for summary judgment on its contract claim*

Chase then moved for partial summary judgment on its contract claim. ROA.2098. To prove that an indemnity duty was triggered, Chase relied on the Mandiant Report to show that Landry's violated rules and data was compromised. ROA.2105-06, 2110-14, 2119, 3607-93.

Landry's moved to strike the Mandiant Report as incompetent summary judgment evidence. ROA.2219. Landry's also controverted the Mandiant Report by offering the IBM Report as evidence of its Security-Guidelines compliance before and during the intrusions. ROA.2236, 2241-42, 2254-55, 3704-850. Landry's emphasized that the Mandiant Report found no Security Guidelines' violations within Landry's cardholder data environment or any data-compromise evidence. ROA.2237, 2240-41, 2253-56.

The district court denied Landry's motion to strike the Mandiant Report and granted Chase's motion for partial summary judgment. ROA.2527, 2530-33. It signed a final judgment stating simply that "Landry's will reimburse Chase for the assessments paid to Visa and Mastercard." ROA.2534 (May 7, 2021).

Landry's promptly noticed an appeal, ROA.2535-37, but Chase moved under Rule 59(e) to amend the judgment. ROA.2542-47. Chase asked the district court to state the amount Landry's owes and restyle the judgment as "partial" because Chase's claim for attorneys' fees and costs remained unresolved. ROA.2542-47. This Court dismissed the appeal pending resolution of Chase's Rule 59(e) motion. ROA.2593-98.

The district court subsequently entered a new final judgment, specifying the $20,062,207 in assessments and deferring a ruling on attorneys' fees. ROA.2599. Landry's timely appealed the second final judgment, and Chase cross appealed. ROA.2633-35, 2636-37.

## STANDARDS OF REVIEW

The Court reviews a district court's grant of summary judgment *de novo*, with that grant only "merited when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Luminant Mining Co. v. PakeyBey*, 14 F.4th 375, 379 (5th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "All facts and all reasonable inferences from facts should be construed most favorably to the nonmoving party." *Id.*

The Court also reviews *de novo* "the district court's interpretation of state law and give[s] no deference to its determinations of state law issues." *Ledford v. Keen*, 9 F.4th 335, 338 (5th Cir. 2021). And it reviews a denial of a motion to strike summary judgment evidence for an abuse of discretion. *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020).

This Court reviews a Rule 12(b)(6) grant *de novo*, "accepting all well-pleaded facts as true and drawing all reasonable inferences in the nonmoving party's favor." *Franklin v. Regions Bank*, 976 F.3d 443, 447 (5th Cir. 2020). To survive a motion to dismiss, a complaint must only allege enough facts to state a facially plausible claim for relief. *See Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020); Fed. R. Civ. P. 8.

## SUMMARY OF THE ARGUMENT

Three errors resulted in $20 million of liability that Landry's does not owe. Correcting the first error resolves the entire case.

***Unenforceable penalties.*** Liquidated-damages provisions allow contracting parties to estimate damages in advance. But such provisions must compensate the contracting *parties*, not *strangers*. The assessments are unenforceable penalties because neither Visa nor Mastercard suffered actual damages, and the assessments are designed to compensate and ultimately paid to third parties. Chase therefore had no legal obligation to pay assessments, and it cannot seek indemnity from Landry's to recover its own voluntary payment.

***Indemnification.*** Landry's agreed to indemnify Chase in two circumstances. Chase failed to show that either event happened, so no indemnity duty was triggered. By ignoring a triable fact issue and by considering inadmissible evidence, the district court erred in granting summary judgment for Chase.

***Equitable subrogation.*** If Landry's faces liability, it plausibly alleged facts to allow it to stand in Chase's shoes and recover assessments from the Payment Brands. Landry's has standing under blackletter law to pursue equitable subrogation claims, and it has direct claims that the district court never addressed. The district court erred in dismissing all claims against Visa and Mastercard.

## ARGUMENT

### I. The Assessments Are Unenforceable Penalties, and There Is No Obligation to Indemnify Chase for Its Voluntary Payment.

Landry's moved for summary judgment and conclusively established its affirmative defense that the assessments are unenforceable penalties. ROA.123 ¶6, 175 ¶82 (pleadings); ROA.190 (MSJ). The Issuer-reimbursement programs do not constitute reasonable estimates of actual damages to non-breaching parties—*i.e.*, Visa or Mastercard—because they are intended only to compensate Issuers, who are neither parties nor third-party beneficiaries of the contract.

Because the assessments are unenforceable penalties, Chase had no liability or legal obligation to pay them. Chase nevertheless acquiesced in a $20 million deduction from its account, which under Texas law is a "voluntary payment." Landry's has no obligation to indemnify Chase for voluntarily payments that are not legally obligated. This legal defense should have disposed of the entire case.

Yet the district court erred by denying the motion for summary judgment. ROA.2095-97. The district court's opinion reflects that it overlooked the primary problem with the assessments—that they are paid to compensate third parties and do not reasonably estimate any harm to either Visa or Mastercard. The law does not allow contracting parties to create contract remedies to estimate harm to strangers. Visa's and Mastercard's assessment schemes placate card issuers but do not withstand legal scrutiny.

## A.    The Assessments Are Unenforceable Penalties.

Whether the assessments are unenforceable penalties is governed by the law applicable in Visa's and Mastercard's Rules—California for Visa and New York for Mastercard. ROA.3223, 1811. Both states' laws align on this issue.

The Payment Brand Rules impose assessments on Acquirers for breach of their responsibility to ensure that merchants comply with the Security Guidelines. ROA.218, 220, 247, 271. The provisions function as liquidated damages. *See Musket Corp. v. Suncor Energy (U.S.A.) Mktg., Inc.*, 759 F. App'x 280, 293 n.18 (5th Cir. 2019) (applying New York law and noting a contract provision requiring payments for breach was a liquidated damages provision although it did not "use the word damages"); *JKC Holding Co. v. Wash. Sports Ventures*, *Inc.*, 264 F.3d 459, 464, 486 (4th Cir. 2001) (similar regarding provision for forfeiture of letter of credit).

Whether the assessments constitute unenforceable penalties rather than valid liquidated damages is a legal question. *Harbor Island Holdings, L.L.C. v. Kim*, 132 Cal. Rptr. 2d 406, 408 (Cal. Ct. App. 2003) ("Whether an amount to be paid upon breach is to be treated as liquidated damages or as an unenforceable penalty is a question of law."); *see also JMD Holding Corp. v. Cong. Fin. Corp.*, 4 N.Y.3d 373, 379 (N.Y. 2005) (same under New York law). Under both California and New York law, the Payment Brands' assessment scheme does not attempt to remedy their own harm and thus amounts to an unenforceable penalty.

### 1.    California and New York hold penalties unenforceable.

Contracting parties are generally limited to compensatory damages measured by their actual damages. While both California and New York law allow parties to estimate and fix damages in advance as an exception to the general rule, such provisions are unenforceable if they do not reasonably estimate the fair compensation for anticipated damages. *See Ridgley v. Topa Thrift & Loan Ass'n*, 953 P.2d 484, 487 (Cal. 1998); *Truck Rent-A-Center, Inc. v. Puritan Farms 2nd, Inc.*, 361 N.E.2d 1015, 1018-19 (N.Y. 1977).

California disallows liquidated damages provisions where they are "unreasonable under the circumstances existing at the time the contract was made." Cal. Civ. Code § 1671(b). A liquidated damages provision is unreasonable if it does not bear a "reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." *Ridgley*, 953 P.2d at 488. And contracting parties are *never* permitted to recover damages unless they actually suffer damages. *See* Cal. Civ. Code § 3300 ("For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby…."). Thus, a provision compelling payment of damages "without regard to the actual damages sustained by the party aggrieved by the breach" is an unenforceable penalty. *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n*, 511 P.2d 1197, 1202 (Cal. 1973).

New York law is the same. Liquidated damages provisions are unenforceable if the damages fixed are "plainly or grossly disproportionate" to the probable losses. *Truck Rent-A-Center*, <u>361 N.E.2d at 1018</u>. Instead, the "actual loss [must be] incapable or difficult of precise estimation" and liquidated amounts must bear "a reasonable proportion to the probable loss." *Id*.; *see also JMD Holding*, <u>4 N.Y.3</u>d at

New York courts refuse to enforce liquidated damage provisions when they fail to meet this standard. *See*, *e.g.*, *Trs. of Columbia Univ. in N.Y.C. v. D'Agostino Supermarkets, Inc.*, <u>36 N.Y.3</u>d 69, 75 (N.Y. 2020) (declining to enforce liquidated damages provision that did not fairly compensate lessor for lessee's delayed installment payments when it "call[ed] for a sum more than sevenfold the amount due if [lessee] had complied fully" with commercial surrender agreement); *Sina Drug Corp. v. Mohyuddin*, <u>122 A.D.3d 444, 445</u> (N.Y. App. Div. 2014) (provision requiring defendants to pay $1 million if they refused to indemnify plaintiffs was unenforceable); *Motichka v. Cody*, <u>5 A.D.3d 185, 187</u> (N.Y. App. Div. 2004) (provision requiring daily $1,000 payments if defendant failed to pay within 60 days was unenforceable because damages were easily ascertainable); *see also NewCSI, Inc. v. Staffing 360 Sols., Inc.*, <u>865 F.3d 251, 261</u> (5th Cir. 2017) (explaining when a New York liquidated damages clause can amount to an unenforceable penalty).

### 2.    The assessments do not reasonably estimate actual damages to Visa and Mastercard.

Visa and Mastercard both have assessment schemes that do not attempt to measure the *actual* damages caused to them by violations of their respective Rules. Both sets of Rules confirm that the assessments in their entirety will eventually pass to *Issuers*. *See* ROA.247 (Visa GCAR), ROA.269-74 (Mastercard ADC).

Under Visa's program, an "Issuer . . . may recover a portion of its . . . losses" via its GCAR program "from an Acquirer(s) to whom liability for such loss has been assigned under the GCAR program":



ROA.247 (Visa GCAR) (highlighting added). The amount of liability assigned to the Acquirer (here, Chase) is determined by Visa's "discretion" in accordance with its own Guide and available information. ROA.247.

Mastercard's program likewise allows "an Issuer to partially recover costs incurred" from ADC Events. ROA.271 (Mastercard ADC). Like Visa, Mastercard does not charge assessments to compensate for its own losses but rather uses assessments to funnel money to *Issuers*. ROA.271.

Chase and the Payment Brands agree that the assessments compensate *Issuers*—banks that are neither parties to nor even third-party beneficiaries of the Payment Brand Rules—for *their* losses from intrusions. ROA.29-30, 33 n.3-4; 91, 98-99, 219-20, 247, 271, 316 n.3. 611-13, 832, *see also* ROA.2103.

The Visa Rules expressly disclaim any intent to confer rights on third parties: "The Visa Rules do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties." ROA.241. Visa has explained: "If Visa concludes it is unable or not in the best interests of the Visa system as a whole to assess or collect an assessment under GCAR for any reason, issuers shall have no right to any GCAR recovery amounts." *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-mi-55555-WMR (N.D. Ga. May 18, 2020), ECF No. 494-1 at 13. And several courts have recognized that the issuing banks are neither parties to nor third-party beneficiaries of the contracts between Visa or Mastercard and acquirers like Chase.[3]

---

[3] *See, e.g.*, *In re TJX Cos. Retail Sec. Breach Litig.*, 564 F.3d 489, 499 (1st Cir. 2009); *In re Heartland Payment Sys., Inc.*, No. H-10-171, MDL No. 2046, 2011, WL 1232352, at *18 (S.D. Tex. Mar. 31, 2011).

That the assessments do not even attempt to compensate contracting parties—Visa and Mastercard—for *their* losses plainly renders them unenforceable penalties. The California Supreme Court noted that "the characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract" and that an unenforceable penalty "bears no reasonable relationship to the range of actual damages that *the parties* could have anticipated would flow from a breach." *Ridgley*, 953 P.2d at 488 (citation omitted); *see also Bondanza v. Peninsula Hosp. & Med. Ctr.*, 590 P.2d 22, 26-27 (Cal. 1979) (liquidated damages clause was a penalty because damages represented expenses of entity not a party to the contract at issue and non-breaching party had no damages); *Dyer Bros. Golden W. Iron Works v. Cent. Iron Works*, 182 Cal. 588, 592-93 (1920) (noting that clause requiring "sums to be paid in the case of a breach of a contract" was unenforceable penalty because "the money was not to be apportioned among the *parties* to the contract … but [to an] association created by the contract, which, as such, could suffer no pecuniary loss from the violation of the agreement.") (emphasis added); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 596, 601-02 (2d Cir. 2005) (per curiam) (upholding dismissal of claims seeking liquidated damages under New York contract to which claimant was not a party).[4]

---

[4] A Texas court recently held that Visa's assessments are unenforceable penalties. *Sally Beauty Holdings, Inc. v. Visa Inc.*, No. 19-6924-158 (158th Dist. Ct., Denton

The proposition that liquidated damages provisions must compensate the contracting parties for their own losses—and not the losses of strangers—is perhaps too elementary to be stated explicitly. But it is blackletter law that monetary contract remedies are designed to provide compensation to the contracting parties. *E.g.*, *Atrium Med. Ctr., LP v. Hous. Red C LLC*, 595 S.W.3d 188, 193 (Tex. 2020) ("American law traditionally recognizes three types of recovery to compensate for a breach of contract: expectancy, reliance, and restitution damages. Expectancy damages award a contract plaintiff the benefit of *its* bargain; reliance damages *compensate the plaintiff* for out-of-pocket expenses; and restitution damages restore *to the plaintiff* a benefit that *it* had conferred on the defendant.") (emphasis added).

A contract provision that allows an unharmed party to impose discretionary assessments that flow to a third party is foreign to American contract law. *Cf. FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014) ("The basic principle underlying contract damages is compensation for losses sustained and no more; thus, we will not enforce punitive contractual damages provisions."). Imposing assessments for losses to third parties is so exotic that Chase could not defend it in response to the summary judgment motion. ROA.319-20. Chase devoted one paragraph to the issue, summarily dismissing the argument.

---

County, Tex., Oct. 8, 2020). Visa's appeal is pending in Cause No. 02-20-00339-CV in the Fort Worth Court of Appeals.

Chase's summary judgment response did not cite a single case validating the Payment Brands' scheme of imposing assessments on Acquirers that they pay to Issuers. The scheme is novel and untested, and in this case should not succeed, because the assessments imposed on Chase undisputedly bear no relationship to any damages Visa or Mastercard anticipated *they* would suffer from a breach. Accordingly, the assessments are unenforceable penalties.

### 3.    The district court misanalyzed the issue.

The district court began correctly by holding that Landry's had "standing to challenge the assessment by the payment brands" because "[i]f the payments were punitive or unrelated to the harm, Landry's might not have to bear them." ROA.2095-98. But then the court failed to recognize that the assessments were punitive and, by design, unrelated to any harm to Visa and Mastercard.

The district court failed to apprehend the crux of the argument—that Visa and Mastercard impose assessments to compensate third parties and do not themselves suffer any actual damages. The district court correctly stated that "[t]he assessments are designed to compensate partially *the banks that issue* the payment brands' credit cards." ROA.2096 (emphasis added). Yet it failed to see that this is the problem: the assessments do not compensate Visa and Mastercard but rather third parties with no contract rights. Instead, the district court fixated on the fact that the assessments are calculated with a discretionary formula. ROA.2096-97. But a discretionary formula,

while also problematic, is the less salient problem next to the undisputed fact that the formula does not compensate the contracting parties. At summary judgment, the district court should have held that a contract cannot liquidate damages designed to be paid to strangers.

Unsupported statements in the court's opinion reflect confusion. Opining that the purpose of the Payment Brands' scheme is ultimately to reimburse consumers, the court stated, "To offer this relief to the consumer, banks, the payment brands, and establishments that accept payment through credit cards, agree to follow rules that oblige them to maintain security measures." ROA.2096. That statement erroneously suggests that there are mutual interlocking contractual agreements among all those parties, which there are not.

It is undisputed that the assessment-imposing contracts are between only the Payment Brands and Chase in its role as an Acquirer. ROA.29-30, 33 n.3-4, 91, 98-99, 219-20, 247, 271, 361, 611-13, 832. No consumers, merchants, or Issuer banks are parties to those contracts. And the district court was simply wrong to state that the amount of the assessments "reflects the losses to . . . *the payment brands* from the security breach." ROA.2096 (emphasis added). This is incorrect and contradicted by Chase's own pleadings. *E.g.*, ROA.30-31, 33 & n.3, 91-92, 97-98, 219-20, 247, 271. Because the assessments do not compensate the Payment Brands, they are unenforceable penalties.

## B.     Chase Is Not Entitled to Indemnification for Paying Penalties.

Because the assessments were unenforceable penalties, Chase had no duty to pay them, and they fall outside the Merchant Agreement's indemnity provisions. Nevertheless, Chase acquiesced in paying the assessments, which were "voluntary payments" and not indemnifiable.

### 1.     The Merchant Agreement does not require Landry's to indemnify Chase for unenforceable penalties.

The Merchant Agreement between Landry's and Chase provides for indemnity at §§ 11.2 and 12. RE.11 (ROA.46-47). Neither provision requires Landry's to indemnify Chase for voluntarily paying assessments.

The Merchant Agreement is governed by Texas law, ROA.47, which interprets contractual indemnity obligations according to their text. *See U.S. Metals, Inc. v. Liberty Mut. Group, Inc.*, 490 S.W.3d 20, 23 (Tex. 2015).

Section 12 of the Merchant Agreement states the indemnity obligations for assessments:

> You [Landry's] understand that **your failure to comply** with the Payment Brand Rules, **including the Security Guidelines**, or **the compromise** of any Payment Instrument Information [*i.e.*, credit card data], **may result in assessments**, fines, and/or penalties by the Payment Brands, and **you agree to indemnify** and reimburse us [Paymentech] immediately **for any such assessment**, fine, or penalty imposed on us or the Member [JPMorgan] and any related loss, cost or expense incurred by us [Paymentech] or the Member [JPMorgan].

A key term in each provision is "indemnify." An indemnification obligation, by definition, requires reimbursement only for cognizable losses. In a seminal indemnity case, the Texas Supreme Court quoted Black's Law Dictionary for the ordinary definition of an indemnity agreement:

> A collateral contract or assurance, by which one person engages to secure another against an anticipated loss or to prevent him from being damnified by the legal consequences of an act or forbearance on the part of one of the parties or of some third person.

*Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (quoting BLACK'S LAW DICTIONARY 692 (5th ed. 1979)); *accord*, *Indemnify*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("To restore the victim of a loss . . . . To save harmless; to secure against loss or damage; to give security for the reimbursement of a person in case of an anticipated loss falling upon him . . . ."). Indemnification thus requires the concepts of *loss* and *legal liability*.

At most, § 12 imposes an indemnity obligation only if the assessments were legally valid. Under Texas law, when an indemnitee has no legal obligation to make a payment, there is no right to indemnification. *See, e.g.*, *Humana Hosp. Corp. v. Am. Med. Sys., Inc.*, 785 S.W.2d 144, 145 (Tex. 1990) (rejecting indemnity claim brought prior to judicial determination of liability); *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex. 1989) (sustaining reversal of indemnity award where payment made absent liability). That is the situation here.

No legal obligation can be imposed by contractual provisions that would result in unenforceable penalties. Because the assessments declared by the Payment Brands were unlawful and unenforceable penalties, Chase had no legal obligation to pay them, and Landry's has no contractual obligation to reimburse Chase for payments Chase was not legally obligated to pay. *See, e.g.*, *Dresser*, 853 S.W.2d at 508.

### 2.   Independently, the voluntary-payment rule bars recovery.

Chase's indemnity claim also fails because it paid the assessments voluntarily. By acquiescing in Visa and Mastercard's $20 million deduction from its account, Chase walked itself right into the voluntary-payment rule—an independent bar to its recovery under Texas law. Chase cannot voluntarily pay assessments only to turn around and seek to recover them via an indemnity claim against Landry's.

Texas contract law recognizes the voluntary-payment rule. Under that rule, "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (quoting *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951)).

This principle applies in the indemnity context, barring a would-be indemnitee from recovering from an indemnitor amounts the indemnitee voluntarily paid to a third party despite no legal obligation to do so.

In one classic case, the voluntary-payment rule barred a shipping company from being indemnified by a truck driver. *See Trans-Cold Express, Inc. v. Hardin*, 415 S.W.2d 431, 436-37 (Tex. App.—Austin 1967, no writ). Where Trans-Cold paid a claim by Armour even though it was not legally obligated to do so, the court held: "Payment of the Armour claim was purely voluntary, without legal requirement, and [Trans-Cold] may not now look to [the driver] as indemnitor to reimburse [it]." *Id.* at 437. Likewise, here, Chase's payment of the assessments was purely voluntary, without legal requirement, and Chase cannot now look to Landry's as indemnitor to reimburse it.

The Texas Supreme Court has held that, even when the text of an indemnity agreement would encompass the claim in question, the indemnitor (here, Landry's) "cannot be held liable . . . for a purely voluntary payment." *Mitchell's, Inc. v. Friedman*, 303 S.W.2d 775, 779 (Tex. 1957), *overruled on other grounds by Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705 (Tex. 1987); *accord, e.g.*, *Sun Oil Co. (Delaware) v. Renshaw Well Serv., Inc.*, 571 S.W.2d 64, 67-68 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.) ("The indemnitor may not, however, be held liable for a purely voluntary payment by the indemnitee.").

In *Mitchell's*, the Texas Supreme Court held that an indemnitee was not automatically entitled to reimbursement for the full amount of a voluntary settlement. 303 S.W.2d at 779.[5] "Having settled the claim without obtaining a judicial determination of its liability," the indemnitee would need "to establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances." *Id.*; *accord, e.g.*, *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 152-53 (5th Cir. 2008) ("[T]he Texas Supreme Court has held that the indemnitee must 'establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances.'" (quoting *Mitchell's*)).

Another Texas court aptly summed up the relevant holding in *Mitchell's*:

> Where an indemnitee voluntarily settles a claim of its indemnitor (absent an unconditional contractual right to settle) without obtaining a judicial determination of its liability, it assumes the burden in its action for reimbursement of proving facts which might have rendered it liable to the claimant, 'as well as the reasonableness of the amount which it paid'. It is necessary for it 'to establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances.'

*Pan Am. Gas. Co. v. Nat. Gas Constr. Corp.*, 418 S.W.2d 380, 381 (Tex. Civ. App.—Waco 1967, writ ref'd n.r.e.) (quoting *Gulf, Col. & Santa Fe Ry. Co. v. McBride*,

---

[5] The Court also held the indemnity agreement in question required the indemnitor to indemnify the indemnitee even for the indemnitee's own negligence, *Mitchell's*, 303 S.W. 2d at 779, and that holding has since been overruled on grounds that are not pertinent here. *See Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex. 1987).

322 S.W.2d 492, 497 (Tex. 1958)); *accord, e.g.*, *XL Specialty Ins*, 513 F.3d at 152-53; *Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc.,* 778 S.W.2d 492, 500 (Tex. App.—Dallas 1989, writ denied); *Trans-Cold Express*, 415 S.W.2d at 436-37; *Consol. Forwarding Co. v. Union Truck Depot, Inc.*, 356 S.W.2d 693, 698 (Tex. Civ. App.—Dallas 1962, writ dism'd); *Hamilton v. Herrin Transp. Co.*, 343 S.W.2d 300, 302 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e.).

Here, Chase could not "prov[e] facts which might have rendered it liable to" the Payment Brands, *Pan Am. Gas*, 418 S.W.2d 3 at 381, because the assessments are unenforceable penalties as a matter of law. Had Chase contested the Payment Brands' claims in court, it could have asserted an absolute legal defense. *See Trans-Cold Express*, 415 S.W.2d at 436-37 (when, on the established facts, third party had no valid claim against indemnitee, indemnitee's payment was voluntary and non-reimbursable); *cf. Producing Props., Inc. v. Sohio Petrol. Co.*, 428 S.W.2d 365, 367 (Tex. App.—Dallas 1968, no writ) (indemnitee was "not entitled to recover against the indemnitor" for having paid a third party's money claim to which there was a good statute-of-limitations defense). For the same reason, no out-of-court payment on the assessment claims, much less payment in full, could be "reasonable and prudent" as required for Chase to recover from Landry's. *E.g.*, *XL Specialty Ins.*, 513 F.3d at 152-53; *see also Trans-Cold Express*, 415 S.W.2d at 436-37.

At the very least, Chase's undisputed failure to challenge the assessments in a judicial forum before acquiescing in them negates good faith. Chase cannot claim ignorance of its strong legal defenses to the assessments. As Chase admits, Landry's "provided Paymentech with arguments to appeal the Assessments to the Payment Brands." ROA.316. Chase should have pressed those arguments in a real court rather than accede to the dictates of the Payment Brands' kangaroo courts.

Indeed, paying $20 million in assessments without seeking legal recourse and instead suing Landry's for indemnity is the opposite of good faith. Chase did not offer any evidence to refute this or create a fact issue. Further, Chase is both an Acquirer and an Issuer bank, so it stands to benefit from the very assessments it is charged while simultaneously seeking to be fully reimbursed by Landry's. The absence of any evidence of good faith precludes Chase from seeking indemnity from Landry's for a voluntary payment. *See, e.g.*, *Pan Am. Gas*, 418 S.W.2d at 381.

\*\*\*

This Court should hold that the assessments are unenforceable penalties, reverse the district court's denial of Landry's motion for summary judgment, and render judgment that Chase take nothing. Because this issue disposes of the entire case, the Court can and should end its analysis here.

## II.     In Any Event, Chase Failed to Prove That It Is Entitled to Indemnity.

Alternatively, the Court should reverse and remand for further proceedings. Chase failed to prove its entitlement to indemnification, much less conclusively so.

The Merchant Agreement creates indemnity rights against Landry's only upon proof that assessments resulted from (1) an actual violation by Landry's of the Security Guidelines or (2) the actual "compromise" of any credit card data. RE.11, § 12. The record lacks any proof of these prerequisites.

Chase's burden was to show not just that Mandiant, the forensic investigator, found violations or compromise but also that such findings are valid and reliable in a court of law. The Mandiant Report does not establish the validity or reliability of its conclusions; it is an unsworn document that is hearsay, lacks a proper foundation, and should have been stricken. ROA.2110-13 (MSJ); 3607-93 (Mandiant Report); 2219-27, 2376-83 (Motion to Strike and Reply). Further, Landry's controverted the Mandiant Report with a sworn, admissible expert declaration concluding it does not prove the prerequisites to indemnity. RE.13; ROA.2248-57.

### A.     The Merchant Agreement Allows for Indemnification Only Upon Proof of Certain Events.

The Merchant Agreement provides indemnification for "assessments" in § 12. RE.11, § 12. The only assessments that are indemnifiable are those that "result" from (1) a "failure" by Landry's "to comply with the Payment Brand Rules, including the Security Guidelines," or (2) the "compromise" of any credit card data:

> You [Landry's] understand that **your failure to comply** with the Payment Brand Rules, **including the Security Guidelines**, or **the compromise** of any Payment Instrument Information [*i.e.*, credit card data], **may result in assessments**, fines, and/or penalties by the Payment Brands, and **you agree to indemnify** and reimburse us [Paymentech] immediately **for any such assessment**, fine, or penalty imposed on us or the Member [JPMorgan] and any related loss, cost or expense incurred by us [Paymentech] or the Member [JPMorgan].

Chase also cited § 11.2's indemnity provision, which applies more generally to "losses, liabilities, and damages," but the district court based its grant of summary judgment on § 12, which expressly applies to "assessments" and is the applicable provision for Chase's claim. RE.11; *see Ayres Welding Co., v. Conoco, Inc.,* 243 S.W.3d 177, 181 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (more specific provisions of contract control over general); *Sonerra Res. Corp. v. Helmerich & Payne Int'l Drilling*, 2012 WL 3776428, at *7-9 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (more specific indemnity provision controlled over more general one); *see also SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 383 (5th Cir. 2017) (even if two Texas contract provisions were inconsistent "the more specific . . . controls"). Regardless, § 11.2 likewise includes a causation requirement and the same duty-triggering conditions.

As plaintiff and summary judgment movant, Chase had the burden to establish that one of these conditions resulted in the assessments. It established neither.

Texas courts construe indemnity contracts under normal rules of contract construction. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). The primary goal is to give effect to the parties' intent, and when the contract is unambiguous it can be construed as a matter of law. *Id.*; *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) ("We begin this analysis with the contract's express language. And we end it there too.").

Here, both parties argue that § 12 is unambiguous, and if both interpretations are reasonable, it must be construed against Chase, as drafter of the agreement. ROA.2106. Section 12's plain text qualifies the duty to indemnify for assessments: Landry's "agree[s] to indemnify . . . for any such assessment"—referring to assessments imposed as a "result" of a "failure [by Landry's] to comply" with Security Guidelines or a "compromise" of credit card data. ROA.47. Any assessment that results from something other than these two qualifying events falls outside the indemnity agreement's scope.

Landry's has no duty to indemnify Chase just because assessments were imposed or intrusions occurred. *Cf. Hoffman v. L & M Arts*, 838 F.3d 568, 581-83 (5th Cir. 2016) (when confidentiality clause in Texas contract did not require hiding sale's existence, no breach resulted from publicity about it). Landry's did not agree to limitless indemnity, regardless of whose conduct is at issue or simply because criminal intrusions put data "at risk."

Chase initially argued that Landry's had a duty to indemnify merely because Mandiant made *conclusions* about the triggering events and the Payment Brands relied on them. ROA.2111-13 ("Mandiant's conclusions 'result[ed] in' the assessments being imposed on Chase by Visa and Mastercard, thus triggering Landry's' duty to indemnify Chase under Section 12."). Chase later stripped down its argument to assert that the mere fact that assessments were imposed was sufficient: "The Agreement did not condition Landry's' obligation to indemnify Chase for Assessments by the Payment Brands on any event *except* for the imposition of Assessments on Chase by the Payment Brands." ROA.2356. Both theories are wrong. Chase had to prove that a violation or compromise in fact occurred.

The Merchant Agreement does not create a categorical, limitless obligation to indemnify Chase for any assessments, whether justified and legal or not. Chase's interpretation wrongly looks to the mere fact that assessments are imposed and ignores whether they "result" from a merchant's fault or compromised data. It is obviously wrong because it ignores that the contract requires one of two express contingencies to occur and then be causally linked to assessments to trigger a duty. Merchants could not rationally agree to indemnify for assessments when they are left holding the bag regardless of fault or actual data compromise, which is precisely why the indemnity agreement includes those conditions as qualifying events.

At summary judgment, Chase needed to establish beyond any doubt the facts giving rise to a duty to indemnify. Its incorrect interpretation of the Merchant Agreement led it to not even try. Its sole piece of evidence—attached in inadmissible form—cannot be considered at all, much less as conclusive proof.

## B.    The Mandiant Report Should Have Been Stricken.

Chase's $20 million judgment rests on the Mandiant Report—the sole piece of evidence addressing indemnity-triggering events. ROA.2105-06, 2119, 3608-93. Landry's moved to strike the report as incompetent summary judgment evidence. ROA.2219-27. The district court denied the motion and even relied on the report. That was an abuse of discretion, and without the report, Chase has no evidence.

### 1.    The Mandiant Report is hearsay.

The Mandiant Report's most glaring problem is that it is hearsay. Chase offered the Mandiant Report for the truth of its conclusions, even though it is an unsworn, out-of-court statement. The report is classic hearsay. Fed. R. Evid. 801.

Hearsay is inadmissible unless it fits into an exception, Fed. R. Evid. 802, which the Mandiant Report does not. *See* Fed. R. Evid. 803. It is not, for example, a business record. *See Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 204-06 (4th Cir. 2000) (investigative reports are not business records merely because done by a company in the business of creating such investigative reports; the purpose and potential bias of the report control).

Although material supporting a summary judgment motion may be presented in a form itself inadmissible at trial, the substance of the evidence must be capable of being put into an admissible form. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *see also Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017). Once Landry's objected that the Mandiant Report's substance "cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), Chase had the burden to show the report "is admissible as presented or to explain the admissible form that is anticipated." *Lee*, 859 F.3d at 355 (quoting Rule 56(c)(2) advisory committee's note to 2010 amendment). Chase did not even attempt to satisfy that burden or deny the report's hearsay status.

###    2.    The Mandiant Report offers expert conclusions without a proper foundation or discovery disclosures.

Further, the Mandiant Report is highly technical and undeniably outside the realm of lay opinions, so Chase bore the burden of laying a foundation for the report's admissibility as expert testimony by demonstrating that "the expert's findings and conclusions are . . . reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Chase did not even attempt to meet its burden. It failed to provide a foundation for the qualifications of the report's author or even satisfy disclosure requirements under Fed. R. Civ. P. 26(a)(2)(C). *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 882–84 (5th Cir. 2004) ("[T]he expert designation requirement of Rule

26(a)(2)(A) applies to all testifying experts."). The district court should have stricken it for that reason alone. *See* Fed. R. Civ. P. 37(c)(1); *Mac Sales, Inc. v. E.I. du Pont de Nemours & Co.*, 24 F.3d 747, 752-53 (5th Cir. 1994) (affirming exclusion of expert testimony because it lacked foundation).

The district court wrongly regarded Mandiant as "an independent company," as if that made the report reliable. ROA.2531. But Mandiant directly reports to the Payment Brands. ROA.2251. Mandiant participates in credit card investigations because it is selected by the credit card companies to do so and is thus biased. ROA.2251. Because its business depends on staying in the Payment Brands' good graces, Mandiant has every incentive to reach "findings" that result in assessments. The report cannot be considered conclusive evidence, especially when Landry's did not even have the opportunity to challenge Mandiant's reliability through discovery, such as by deposing the report's author. *See* ROA.2893-95.

Failing to strike the Mandiant Report was harmful because Chase had no other evidence to support an indemnity duty. The $20 million judgment cannot stand.

### C.    Even with the Mandiant Report, Chase Did Not Carry Its Summary Judgment Burden.

Even if the Mandiant Report were competent evidence, it did not satisfy Chase's summary judgment burden. The Report does not support finding that Landry's violated Security Guidelines or that data was compromised, and certainly not beyond genuine dispute. Drawing "all justifiable inferences" from the Mandiant

Report in non-movant Landry's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), it actually supports the *lack* of any violation or compromise. Thus, even if failing to strike the Mandiant Report were not an abuse of discretion, summary judgment based on that evidence should still be reversed.

> 1.    **The Mandiant Report does not support finding a breach of the Security Guidelines.**

The Mandiant Report did not make findings of deficiencies in Landry's *cardholder data environment*, which would be required to show an actual violation of the Security Guidelines. All requirements stated in the Security Guidelines apply only to the systems that store payment card data, not to a company's corporate environment. ROA.2273; ROA.2250-51, 2253-54.

In particular, the Mandiant Report concluded that Landry's *corporate environment* lacked a feature that Security Guideline Requirement 8.3 mandates for the *cardholder data environment*—"two-factor authentication for remote access." ROA.2308, 3155-56. Mandiant did *not* find that two-factor authorization was missing from Landry's card-data environment, meaning that what Mandiant claimed to have found could not be the Security Guidelines violation required to trigger exposure against Landry's. ROA.2253-54. Because Requirement 8.3 applies only to a merchant's card-data environment, ROA.2308; ROA.2250-51, 2253-54, Mandiant's finding regarding the corporate systems does not, even if true, establish that Landry's violated Requirement 8.3.

Mandiant also found alleged violations of related sections of Requirement 8, but these all present the same issue—Mandiant did not determine that these deficiencies existed in the card-data environment. ROA.2251-52, 2255-56. Moreover, Mandiant did not conclude that any of these alleged deficiencies allowed the intruders to enter Landry's network. ROA.2254-56, 2155-56, 3107-08, 3151-52. Thus, the Mandiant Report does not support a conclusive finding that Landry's committed a violation of the Security Guidelines.

### 2.   The Mandiant Report could not show that any data was "compromised."

Nor did the Mandiant Report conclude that any data was "compromised"—the term that triggers the indemnity duty under the Merchant Agreement. RE.11 § 12. Instead, the Mandiant Report only found that data was put "at risk." ROA.3184. Chase argued below that "compromised" was synonymous with "at risk," ROA.2111, which is plainly refuted by reading the contract as a whole and in context.

The district court did not reach this issue at all, ending its analysis with the erroneous holding that the Mandiant Report proved a Security Guidelines violation. RE.9, ROA.2532. But the report did not prove a violation, and the court should have properly construed the Merchant Agreement to require actual compromise, which Chase did not meet its burden to show.

Under Texas law, "'When a contract's meaning is disputed, [the] primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument.'" *Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 312 (5th Cir. 2021) (quoting *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018)). The Merchant Agreement must be "construed as a whole according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise." *Id.* (quoting *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019) (quotation marks omitted)).

The Merchant Agreement does not define "compromise," but it incorporates the Payment Brand Rules, which inform the meaning. ROA.44. Visa's and Mastercard's rules both address the industry meaning of "compromise" and distinguish between the concepts of "actual" and "potential" compromise.

Mastercard's rules define both an "ADC Event" and a "Potential ADC Event," where an "ADC Event" refers to an "Account Data Compromise Event." ROA.2334. An actual "ADC Event" is "[a]n occurrence that results, directly or indirectly, in the unauthorized access to or the disclosure of account data." ROA.2334; *see also, e.g.*, ROA.1851 (Mastercard Security Rules and Procedures referring to "ADC Events and *Potential* ADC Events" (emphasis added)). A "Potential ADC Event" *could* result in unauthorized access to or disclosure of account data. ROA.1851.

Visa likewise distinguishes between "compromise" and *exposure to* or *risk of* compromise. Prior to 2015, Visa's rules, in describing events qualifying for liability under the Visa GCAR program, referred to data being "exposed to a compromise." ROA.2338. A 2015 revision restated that qualification to refer to data being "At Risk." ROA.2986. Both phrasings require reading "compromise" to mean something more and different than merely being exposed to or at risk of being compromised.

Because the Payment Brand Rules are incorporated into the Merchant Agreement, those distinctions between "potential" and "actual" compromise, and between data being actually compromised or merely "at risk" of compromise, must be maintained when interpreting "compromise" as used in § 12. *See Sanchez Oil*, 7 F.4th at 312. Chase's preferred construction of "compromise" to include merely *potential* compromise would render the distinctions drawn by the Payment Brand Rules superfluous, which is not allowed in contract interpretation. *E.g.*, *FPL Energy*, 426 S.W.3d at 63 ("We consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless."); *In re Isbell Records, Inc.*, 586 F.3d 334, 337 (5th Cir. 2009) ("'[A] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'"). The Merchant Agreement, properly construed as a whole, directs the construction of "compromise" as requiring the actual acquisition of data.

These distinctions between actual and potential compromise mirror their common legal usage in the data security context. For example, a Texas data security statute reinforces that data is not "compromised" unless *acquired* by unauthorized persons. TEX. BUS. & COM. CODE § 521.053(a) (defining "breach of system security" to mean "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of sensitive personal information").

Finally, when construing contracts, Texas courts "avoid constructions that would lead to absurd results." *Vill. Place, Ltd. v. VP Shopping, LLC*, 404 S.W.3d 115, 129 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *see also, e.g.*, *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex. 1996). Courts "construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam) (quotation marks omitted); *accord FPL Energy*, 426 S.W.3d at 63.

Here, to the extent Chase's position is that data has been "compromised" when it is merely at "risk" of being revealed to intruders, Chase proposes an unworkable standard that would lead to absurd, unreasonable, and inequitable results. The threat of criminal activity cannot be eliminated, and there is no feasible way to eliminate all risk to credit card data. *See, e.g.*, David W. Opderbeck, *Cybersecurity, Data*

*Breaches, and the Economic Loss Doctrine in the Payment Card Industry*, 75 MD. L. REV. 935, 983 n.265 (2016) (noting that "given the reality that some people will engage in malicious cyber intrusions" and other factors "it is impossible with present technology to achieve zero risk of loss [relating to credit card data] without imposing a grossly excessive burden in proportion to the probable loss").

The Payment Brands expressly acknowledge this. *E.g.*, ROA.1851 (Mastercard Rules: "Given the abundance and sophistication of criminals, ADC Events and Potential ADC Events are risks inherent in operating and participating in any system that utilizes payment card account data for financial or non-financial transactions."). Under Chase's theory, "the compromise of any Payment Instrument Information," ROA.47, would apply any time credit cards are used for payment. Compromise must mean that unauthorized persons actually acquire card data, or else merely identifying a risk could violate the Payment Brand Rules. Without more, the Mandiant Report is no evidence data was "compromised."

### D.    At Most, Chase's Evidence Raises Genuine Issues of Material Fact.

The Mandiant Report admits that Mandiant found no evidence that the criminal intruders acquired any card data. ROA.3108. It repeatedly states that it "did not find evidence that the intruders transferred data out of the network." ROA.3107-08, 3151. As a result, the Mandiant Report provides no evidence that any credit card data was compromised and actually tends to refute that claim.

Regardless, the 2013 IBM Report supplies conflicting evidence. The forensic-data expert (Ms. Carr) explained that the IBM Report found that Landry's met all Security Guideline standards, specifically including those set out in Requirement 8. ROA.2254-55, 3704-3804, 3735-3845. Like Mandiant, IBM was qualified by the PCI Council. ROA.2254.

Carr's declaration explained that compared to the Mandiant Report, the IBM Report is more probative of Landry's compliance and whether any deficiencies resulted in the intrusion. ROA.2254. The process leading to the IBM Report was a more rigorous assessment of Landry's system. ROA.2254. And the IBM Report was issued closer in time to and before the first intrusion. ROA.2254. IBM issued its report in September 2013, about six months before the first intrusion. ROA.3731 (dated 9/18/2013). There is no evidence that Landry's downgraded its systems in any way between September 2013, when IBM assessed them, and March 2014, when the intrusions began. The Mandiant Report, by contrast, was not issued until February 2016, more than a year after the last intrusion. ROA.3608-09.

The district court failed to examine this evidence in the light most favorable to Landry's. Without analysis, the district court simply declared that "[t]he Mandiant report shows that Landry's violated the brands' security guidelines," while simultaneously declaring that the report's "merits are beyond the scope of this case." ROA.2531. This conclusion ignores the problems with the Mandiant Report

identified by Carr: the Mandiant Report's conclusions were limited to the Landry's corporate system and did not address the relevant card-data environment. And the (incongruous) assertion that the report's "merits" are irrelevant to the case ignores that the Merchant Agreement requires Chase to prove either noncompliance or the compromise of data to support its claims.

Likewise, the district court dismissed the IBM Report as "irrelevant to the agreement between Chase and Landry's." ROA.2531-32. Although acknowledging that "[t]he reports might disagree," the court dismissed conflicting evidence by stating that the merits of the reports were not "at issue." ROA.2531. This is tantamount to holding that Visa and Mastercard could impose assessments for any reason they choose, and the reason cannot be challenged in court. The underlying facts justifying assessments *are* at issue, and the district court erred by ignoring controverting evidence.

The errors in granting summary judgment are threefold. The district court (1) failed to recognize that Chase needed to prove the factual predicate for its breach of contract claim; (2) failed to strike the Mandiant Report or, at the very least, apply the summary judgment standard and consider the evidence in the light most favorable to Landry's; and (3) improperly acted as trier of fact by choosing the Mandiant Report over the controverting Carr Declaration. Genuine issues of material fact require a remand.

## III.    Alternatively, the Claims Against Visa and Mastercard Are Viable.

Landry's filed third-party complaints against Visa and Mastercard to assert claims as Chase's equitable subrogee and its own direct claims. ROA.592-632, 636-76. The district court dismissed all claims under Rule 12(b)(6). RE.8, ROA.2523. Yet the 2-page opinion leaps from background to conclusion without analysis. It failed to discuss the equitable subrogation claims or even acknowledge the direct claims. The erroneous dismissal order should be reversed and the claims remanded. If Landry's owes any liability to Chase, then Landry's has a right to seek recovery from Visa and Mastercard and challenge their illegal assessments.

### A.    Equitable Subrogation Allows Non-Parties to Challenge Contracts.

The district court correctly recognized two ways that non-parties may enforce contractual rights: "Only the parties to a contract have the right to enforce its terms absent a third-party beneficiary or subrogation." RE.7. Landry's relied solely on its rights as Chase's equitable subrogee. Yet the district court neglected to address this theory at all, resting its opinion on the undisputed fact that Landry's is not a party to the contracts: "Landry's cannot challenge the assessment provision in the contract to which it is not a party." RE.7. The district court then dismissed the claims against Visa and Mastercard on the ground that "Landry's does not have standing to challenge the agreement between JPMorgan and the brands." RE.7.

The district court noted and then immediately overlooked that subrogation rights allow non-parties to assert the contractual rights of another: "Subrogation is the substitution of one party for another such that the new party may assert the rights of the substituted party." *Cont'l Cas. Co. v. N. Am. Capacity Ins. Co.*, 683 F.3d 79, 85 (5th Cir. 2012); *see also Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex. 2007); *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992). Subrogated parties "stand in the shoes" of their subrogors, allowing them "to assert any claims or rights held by" subrogors against third parties. *Associated Int'l Ins. Co. v. Scottsdale Ins. Co.*, 862 F.3d 508, 510 (5th Cir. 2017).

The subrogation rights here arise from the contractual relationship between Landry's and Chase, which allows Landry's to stand in Chase's shoes to challenge Chase's contracts with the Payment Brands. ROA.613-17, 620, 622-23, 625, 659-60, 662, 664-65, 667, 669. The Merchant Agreement gives rise to equitable subrogation because it contains the indemnity obligation used to hold Landry's liable for the assessments. That agreement chooses Texas law, so Texas law likewise governs whether Landry's is equitably subrogated to Chase. RE.11; *see Cent. Transp., LLC v. Balram Trucking, Ltd*, 746 F. App'x 508, 510-11 (6th Cir. 2018) (law governing subrogor-subrogee relationship governed whether subrogation arose); *Javed v. British Airways PLC*, 980 F.2d 1407, 1408 (11th Cir. 1993) (same); *Carrick v. Zurich-Am. Ins. Grp.*, 14 F.3d 907, 910 (3d Cir. 1994) (same).

### B.     Landry's Has Standing Against Visa and Mastercard as Chase's Equitable Subrogee.

"Texas courts interpret [the doctrine of equitable subrogation] liberally." *Frymire Eng'g Co., Inc. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). It applies when a party "involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." *Id.* In *Frymire*, decided at the summary judgment stage, the Texas Supreme Court held that a subcontractor had standing to pursue claims against a manufacturer via equitable subrogation when evidence showed it involuntarily paid a debt primarily owed by the manufacturer. *Id*. at 147. Here, at the pleading stage, Landry's only had to plausibly allege that if it is judicially ordered to pay Chase it will be paying a debt owed primarily by Visa and Mastercard. Landry's did so. *See* ROA.615-25, 660-70. This allegation gave rise to standing to pursue claims under the theory of equitable subrogation.

The district court's holding about standing was wrong. Accepting as true allegations that the Payment Brands unlawfully collected assessments from Chase, Visa and Mastercard owe a debt of reimbursement to Chase. And if Landry's must reimburse Chase, it has standing—under blackletter law—to seek recovery from the Payment Brands under any theory that Chase could have asserted. Landry's will have involuntarily paid Chase money that the Payment Brands owe to Chase because they were never legally entitled to collect it from Chase. *See, e.g.*, *Frymire*, 259 S.W.3d at 143-44; *Mid-Continent*, 236 S.W.3d at 774.

Notably, the district court did not reach the merits of the pleaded theories for why the assessments were invalid, which raised grounds beyond unenforceable penalty (already discussed in Section I.A). ROA.606-15, 651-60. For example, the assessments violated the Payment Brands' rules because:

- The assessments included liability for accounts ineligible under the Rules for assessments. ROA.606-08, 651-52.

- No intrusion involved a minimum of 30,000 accounts. ROA.652-53.

- The assessments were not based on Issuers' actual losses. ROA.608-10, 653-55.

- There was no basis for concluding that any Landry's properties violated the Security Guidelines in a manner that could have allowed compromise of card accounts. ROA.610-11.

- JPMorgan was not "responsible" for the alleged ADC Events. ROA.655-56.

In this posture, the district court had to take those allegations as true. *Franklin*, 976 F.3d at 447. Yet the district court abruptly disregarded well-pleaded claims on the incorrect theory that Landry's needed to be a party to a contract with the Payment Brands to assert them. This was error. *See, e.g.*, *Colony Ins. Co. v. Peachtree Constr. Ltd.*, 647 F.3d 248, 255-56, 258 (5th Cir. 2011) (applying Texas law) (vacating and remanding dismissal order when complaint alleged facially plausible claims for equitable subrogation). If the Court does not render judgment because the assessments are unlawful penalties, it should remand these claims so Landry's can challenge the assessments on other grounds.

### C.    Landry's Would Also Have Standing if New York Law Applied.

The Payment Brands briefly argued below that New York law applies and required dismissal under *Jetro Holdings, LLC v. Mastercard Int'l Inc.*, 88 N.Y.S.3d 193 (N.Y. App. Div. 2018). ROA.1996-98; ROA.2017. New York law does not apply because the Merchant Agreement chooses Texas law. ROA.47. In any event, New York applies equitable subrogation broadly such that Landry's would have standing under either state's law. *See, e.g.*, *Millennium Holdings LLC v. Glidden Co.*, 53 N.E.3d 723, 728 (N.Y. 2016); *Chem. Bank v. Meltzer*, 712 N.E.2d 656, 661 (N.Y. 1999); *Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Co.*, 878 N.Y.S.2d 97, 105-06 (N.Y. App. Div. 2009).

The *Jetro* decision does not affect the analysis. While *Jetro* bears superficial similarities to this case, as it involves a merchant who sued Mastercard as subrogee of its indemnitee acquirer, there is a key distinction: the *Jetro* merchant admitted that its indemnity contract "obligated [it] to indemnify [the acquirer] for any penalties imposed by MasterCard, 'even in cases when MasterCard violated the Standards or otherwise violated the law by imposing the assessment[s] in question.'" 88 N.Y.S.3d at 196. Thus, the merchant had admittedly paid *its own* debt owed directly to the acquirer and had not involuntarily paid a debt owed by another as required for equitable subrogation.

Here, the Merchant Agreement contains no such language requiring Landry's to indemnify Chase even for unlawful assessments. *See* ROA.44-49. *Jetro* thus offers no basis to dismiss claims for equitable subrogation.

### D. Dismissing the Direct Claims Was Error Because the District Court Failed to Address Them.

Landry's also pleaded direct claims against Visa and Mastercard. ROA.625-31, 670-75. Specifically, Landry's pleaded claims for unjust enrichment, money had and received, and statutory claims for deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200; N.Y. Gen Bus. Law § 349. The district court did not even acknowledge these claims in its opinion, so its order granting dismissal of all claims was erroneous and reversible on this ground alone. *See, e.g.*, *Malik v. Cont'l Airlines Inc.*, 305 F. App'x 165, 170 (5th Cir. 2008) (per curiam) (reversing and remanding claims dismissed under Rule 12(b)(6) because district court failed to address them); *see also Foland v. Seacor Marine, Inc.*, 40 F.3d 385, 1994 WL 652535, at *4 (5th Cir. 1994) (per curiam) (remanding claim not expressly addressed by district court); *Armstrong v. Trico Marine, Inc.*, 923 F.2d 55, 57-58 (5th Cir. 1991) (same).

Had the district court engaged with the direct claims, there would have been no basis to dismiss them for failure to state a claim. Those claims were plausibly pleaded under the correct legal standard. While this Court should remand to the district court to address these claims in the first instance, the following confirms that the Rule 12(b)(6) standard was fully satisfied.

### 1. The unjust enrichment/money had and received claims should be remanded.

The unjust enrichment / money had and received claims against Visa and Mastercard primarily alleged that the Payment Brands imposed assessments on Chase without any contractual or lawful basis, unjustly enriching themselves, when they could reasonably foresee that Landry's could be damaged by having to reimburse Chase for the unlawful charges. ROA.625-28, 670-72.

Texas law governs these claims because of the substantial connection to Texas. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 405 (5th Cir. 2004)[6] (applying these factors to choice-of-law issue regarding unjust enrichment claim); *see also* ROA.1926-27, 1964-66. Under Texas law, to prevail on a claim for money had and received, a plaintiff need only show "that defendant holds money which in equity and good conscience belongs to" it. *Staats v. Miller*, 243 S.W.2d 686, 687-88 (Tex. 1951). It "is a doctrine applied to prevent unjust enrichment." *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006), *rev'd on other grounds*, 240 S.W.3d 869 (Tex. 2007). A party may also "recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros.,*

---

[6] (1) Landry's is a Texas resident; (2) a substantial portion of the events underlying imposition of the assessments occurred in Texas; (3) the Payment Brands sent their demands for the assessments to JPMorgan in Texas; (4) Paymentech demanded indemnification from Landry's in Texas; and (5) if Landry's must indemnify Chase for the assessment, the payment will be made and received in Texas.

*Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). In short, unjust enrichment occurs whenever "the party sought to be charged wrongfully secures a benefit or passively receives one which would be unconscionable for him to retain." *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 40 (Tex. App.— Corpus Christi 1990), *aff'd*, 832 S.W.2d 39 (Tex. 1992). The facts pleaded in the third-party complaints plausibly assert these claims.

### 2. The deceptive business practices claims should be remanded.

Landry's also pleaded claims under deceptive business practices statutes. ROA.628-31 (claim against Visa under Cal. Bus. & Prof. Code § 17200); ROA.672-75 (claim against Mastercard under N.Y. Gen Bus. Law § 349). These claims likewise are well-pleaded.

In a very similar case against Visa, a federal court held that a merchant's claims like those brought by Landry's are viable under the California statute. *Genesco, Inc. v. Visa U.S.A. Inc.*, 2013 WL 3790647, at *23 (M.D. Tenn. 2013).

The same is true for the claim against Mastercard under the New York statute. "To state a claim for a § 349 violation, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y.

2009)). The consumer-oriented requirement "has been construed liberally" by New York courts. *New York v. Feldman*, 210 F.Supp.2d 294, 301 (S.D.N.Y. 2002); *see also Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris, USA, Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004) ("[T]he scope of the statute is intentionally broad, applying to virtually all economic activity"). Those courts ask "whether the matter affects the public interest in New York"—such as by affecting consumers' use of credit cards— "not whether the suit is brought by a consumer or a competitor." *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995); *Genesco*, 2013 WL 3790647 at *21 (noting that factual allegations like those here involve the operation of the card payment system, implicating consumers).

In short, the district court should have addressed Landry's direct claims and denied dismissal of them. Because it did not, this Court should, at the very least, reverse and remand as to those claims.

## CONCLUSION

The Court should reverse and render judgment that Chase take nothing, because Landry's owes no indemnity for unenforceable penalties. Alternatively, the Court should reverse the grant of summary judgment for Chase and dismissal of Landry's third-party complaints against Visa and Mastercard, remand for further proceedings, and grant Landry's any other relief to which it is entitled.

Dated: December 9, 2021

Respectfully submitted,

/s/ *Constance H. Pfeiffer*

| | |
|---|---|
| ORRICK, HERRINGTON & SUTCLIFFE, L.L.P. | YETTER COLEMAN LLP |
| Douglas Harlan Meal | Constance H. Pfeiffer |
| dmeal@orrick.com | cpfeiffer@yettercoleman.com |
| Seth Carlton Harrington | Christian J. Ward |
| sharrington@orrick.com | cward@yettercoleman.com |
| 222 Berkley Street, Suite 2000 | Shayna M. Goldblatt |
| Boston, Massachusetts 02116 | sgoldblatt@yettercoleman.com |
| (617) 880-1800 | 811 Main Street, Suite 4100 |
| | Houston, Texas 77002 |
| FOGLER, BRAR, O'NEIL | (713) 632-8000 |
| & GRAY LLP | |
| Murray Fogler | |
| mfogler@foglerbrar.com | |
| Michelle Gray | |
| mgray@foglerbrar.com | |
| 909 Fannin St., Ste. 1640 | |
| Houston, Texas 77010 | |
| (713) 481-1010 | |

**Attorneys for Defendant-Appellant /
Cross-Appellee Landry's Incorporated**

### CERTIFICATE OF SERVICE

I certify that this brief was filed with the Court via the court's electronic filing system, on the 17th day of December, 2021, and an electronic copy of the response was served on all counsel of record, as listed below, via the court's electronic filing system on the same date:

David Bruce Salmons
Jason York Hoo Siu
MORGAN, LEWIS & BOCKIUS, L.L.P.
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
david.salmons@morganlewis.com
jason.siu@morganlewis.com

Michelle Park Chiu
MORGAN, LEWIS & BOCKIUS, L.L.P.
1 Market Street
San Francisco, California 94105
michelle.chiu@morganlewis.com

***Counsel for Appellees/Cross-Appellants Paymentech, L.L.C.; JPMorgan Chase Bank, N.A.***

Stephen Patrick Pate
COZEN O'CONNOR, P.C.
1221 McKinney Street, Suite 2900
Houston, Texas 77010
spate@cozen.com

Matthew C. Daly
Martin S. Hyman
GOLENBOCK EISEMAN ASSOR BELL & PESKOE, L.L.P.
711 3rd Avenue, 17th Floor
New York, New York 10017
mdaly@golenbock.com
mhyman@golenbock.com

***Counsel for Appellee/Cross-Appellant Mastercard International, Inc.***

Allyson Newton Ho
Andrew Patrick LeGrand
Elizabeth Ashley Kiernan
GIBSON, DUNN & CRUTCHER, L.L.P.
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
aho@gibsondunn.com
alegrand@gibsondunn.com
ekiernan@gibsondunn.com

***Counsel for Appellees /Cross-Appellants Visa, Incorporated***

/s/ *Constance H. Pfeiffer*

Constance H. Pfeiffer

### CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitations of <u>Federal Rule of Appellate Procedure 32(a)(7)(B)</u> because this document contains 12,994 words, excluding the parts of the document exempted by <u>Federal Rule of Appellate Procedure 32</u>.

2.      This document complies with the typeface requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)</u> and the type-style requirements of <u>Federal Rule of Appellate Procedure 32(a)(6)</u> because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Times New Roman font.

Date:     <u>December 17, 2021</u>          <u>/s/  *Constance H. Pfeiffer*</u>
                                               Constance H. Pfeiffer